Clerk's Copy

FILED
U.S. DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 16 1999

CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CONCERNED CITIZENS FOR
NUCLEAR SAFETY, INC. et al.,

Plaintiffs,

v.                                                CIV. No. 94-1039 JP

UNITED STATES DEPARTMENT OF
ENERGY and SIEGFRIED S. HECKER,

Defendants.

## MEMORANDUM OPINION AND ORDER

On December 2, 1998, Plaintiff Concerned Citizens for Nuclear Safety ("CCNS") filed its Motion for Order to Modify and Enforce the Consent Decree and Supplemental Consent Decree (Doc. No. 97). At an evidentiary hearing held January 29, 1999, Matthew Ortiz represented the Plaintiff and Alan Greenberg, John Zavitz, Lisa Cummings, Eileen MacDonough, and Jonathan Hewes represented the Defendants. In a Memorandum Opinion and Order entered February 8, 1999, I denied that portion of the motion requesting enforcement of Paragraph 6.3 of the Consent Decree. In its motion, Plaintiff also requested that I modify the Consent Decree to increase from $300,000.00 to more than $424,000 the amount of money that Defendant DOE must pay for the first independent audit of compliance by Los Alamos National Laboratory ("LANL") with the regulations promulgated under the Clean Air Act, 40 C.F.R. §§ 61.90-61.97.

After Senior United States District Judge Mechem granted partial summary judgment in favor of the Plaintiff, the parties began negotiating the terms of a settlement of the case. The

parties and their counsel of record agreed to the language of the Consent Decree that resulted from those negotiations. In particular, all parties and their counsel agreed to the limit on the amount of money to be spent on each audit. With respect to the initial audit to determine compliance with the Clean Air Act as of 1996, all parties and their counsel agreed to a limit of $300,000. The parties also agreed to limits of $200,000 for the 2000 audit, $150,000 for the 2002 audit, and $50,000 for the 2003 audit. Furthermore, the parties later negotiated a Supplemental Consent Decree requiring Defendant DOE to pay an additional $90,000 to Plaintiff for the services of an independent monitor of the audit process. Although he did not participate in the negotiation of the terms of the Consent Decree, Dr. John Till agreed that his company, Radiological Assessments Corporation ("RAC"), could perform the initial audit for under $300,000 and RAC was named as the auditor in the Consent Decree.

Paragraph 4.6 of the Consent Decree states, "In no event shall the cost of the first audit exceed $300,000." Plaintiff's Exh. A at 6. Plaintiff CCNS contends that modification of this clear language is justified under Paragraph 28(b), which provides: "Nothing in this Decree shall be construed to limit the right of a party to seek modification of this Decree based upon a change in applicable law or upon other appropriate showing." Id at 19. Plaintiff does not contend that there has been a change in the law; rather, Plaintiff argues that it has made an "appropriate showing" for modification of the Consent Decree under Paragraph 28(b), and that the standard for such a showing is less stringent than that of Federal Rule of Civil Procedure 60(b). Plaintiff provided absolutely no legal authority in support of this assumption. The requirement that the party seeking modification make an "appropriate showing" is so vague that I am forced to turn to Rule 60(b) and established legal precedent in an effort to interpret that phrase.

2

As the Supreme Court held in Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384 (1992), "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." In addition, the Tenth Circuit has admonished that "[r]elief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., 909 F.2d 1437, 1440 (10th Cir. 1990).

Plaintiff CCNS contends that modification of the Consent Decree is warranted under Rules 60(b)(3), (5), and (6), which provide:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:
> . . .
> (3) fraud . . ., misrepresentation, or other misconduct of an adverse party;
> . . .
> (5) it is no longer equitable that the judgment should have prospective applications;
> (6) any other reason justifying relief from the operation of the judgment.

FED. R. CIV. PRO. 60(b).

With respect to Rule 60(b)(3), Plaintiff failed to present sufficient evidence to meet Plaintiff's burden of proving that Defendant DOE's actions constituted fraud, misrepresentation, or other misconduct justifying modification of the Consent Decree and the imposition of a new requirement that Defendant DOE pay more than $124,000.00 above the amount that Plaintiff and DOE had explicitly agreed was the maximum DOE would have to pay for the initial audit.

With respect to Rule 60(b)(5), the Supreme Court in Rufo stated that modification may be warranted when changed factual conditions make compliance with the decree substantially more

3

onerous, when the decree proves to be unworkable because of unforeseen obstacles, or when enforcement of the decree without modification would be detrimental to the public interest. Rufo, 502 U.S. at 384.

In this case, there have been no changes in factual conditions. Although the parties may not have anticipated the many comments and questions the independent auditor, RAC, received or the many obstacles encountered during the audit process, that failure does not constitute a change in factual conditions that existed at the time Plaintiff entered into the Consent Decree.

The Consent Decree has not become unworkable due to unforseen obstacles such as the unanticipated costs of completing the audit. According to Paragraph 4.1, the purpose of the independent audits is to "verify whether LANL is in full compliance with the Clean Air Act." Plaintiff's Exh. 1 at 3. The Draft Partial Report issued by the audit team reaches a conclusion as to LANL's compliance and states that it is unlikely that the audit team's conclusions will change as a result of a review of additional materials. Plaintiff did not show that the remainder of the audits could not be performed without the additional funding requested by RAC for completion of the initial audit. Given the fact that the RAC audit team has already reached a conclusion regarding LANL's compliance, it is unclear how the auditor's failure to answer questions from the independent monitor, the parties, and others, see Defendant's Exhibit 3, will jeopardize the future audits and render the Consent Decree unworkable. Although Dr. John Till, the leader of the audit team, stated at the hearing that he feels a personal and professional responsibility to answer the various comments and questions that have been raised during the audit process, the terms of the Consent Decree do not insist that every question regarding the audit be answered. The Consent Decree does insist, however, that the initial audit be performed for no more than

4

$300,000.[1]

Finally, failure to modify the Consent Decree would not be adverse to the public interest. As RAC, the independent auditor, stated in the Draft Partial Report, it has determined that in 1996 LANL did not meet certain regulatory and technical requirements of 40 C.F.R. § § 61.90-61.97, Subpart H, but that it is unlikely that LANL exceeded the 10 millirem per year dose standard prescribed in the regulation. Defendant's Exh. 1 at 97. The audit team also has stated that many of the deficiencies noted in the Draft Partial Report have already been corrected or will be corrected soon, id., and that RAC does not believe that its overall conclusion with regard to compliance will change with the review of additional information. Id. at v. Thus, it appears that the first audit has fulfilled its purpose: to determine LANL's degree of compliance with the Clean Air Act's regulations in 1996. Requiring Defendant DOE to pay an additional $124,000.00 to respond to comments, some of which refer to "issues not clearly defined in the regulations," Defendant's Exh. 1 at 98, would not be in the public interest.

Plaintiff also argues that the failure of DOE and Plaintiff to properly predict the cost of the audit constitutes mutual mistake. Section 151 of the Restatement (Second) of Contracts defines a mistake as "a belief that is not in accord with the facts." Comment (a) to Section 151

---

[1] During his testimony Dr. Till also expressed the sensible view that it may be in the best interests of the DOE and LANL to expend funds in excess of the $300,000 cap on the cost of the initial audit in order to attain a more detailed and comprehensive report which would then serve as a better baseline for measuring compliance when the future audits are performed. Nothing in this Memorandum Opinion and Order prohibits DOE from voluntarily spending additional amounts to have RAC respond to DOE's comments on the Draft Partial Report or to answer questions raised by others about it or to have it subjected to peer review. This Memorandum Opinion and Order simply states that the language of the Consent Decree, which the parties freely chose, does not legally obligate DOE to exceed the agreed $300,000 limit.

explains that the erroneous belief must relate to the facts as they existed at the time of the making of the contract. A party's *prediction* or judgment as to events to occur in the future, even if erroneous, is not a "mistake" as that word is defined by the Restatement. See also RESTATEMENT (SECOND) OF CONTRACTS § 151 cmt. a, illus. 1 (1981). In applying this analysis to the facts in this case, I conclude that there was no mutual mistake. The parties simply failed to properly predict events that would affect the cost of the initial audit. The mistake the parties made was not one of the facts as they existed when the parties chose the language of the Consent Decree, and consequently there was no mutual mistake that would warrant revision of the fully negotiated terms of the parties' Consent Decree.

At the hearing the head of the audit team, Dr. John Till, expressed his strong desire to answer the many comments and questions that the parties, the independent monitor, and others have submitted in response to the initial audit and stressed the need for independent peer review of the audit team's work. While it would be ideal if such additional work could be done in order to produce a more thorough and polished study, there is no basis in the law for a modification of the parties' agreement. That is particularly true where, as here, both Plaintiff CCNS and Defendant DOE bear some responsibility for exceeding the $300,000 budget.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Order to Modify and Enforce the Consent Decree and Supplemental Consent Decree (Doc. No. 97) is DENIED with respect to Plaintiff's request for modification of the Consent Decree.

_____
James A. Parker
UNITED STATES DISTRICT JUDGE