IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CONCERNED CITIZENS FOR
NUCLEAR SAFETY, et al.,

    Plaintiffs,

vs.                                      No. CIV-94-1039 JP/WWD

UNITED STATES DEPARTMENT
OF ENERGY, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses two motions concerning a Consent Decree that the parties entered into by Order of the Court on March 25, 1997. On April 8, 2003, Defendant United States Department of Energy ("DOE") filed a Motion to Dismiss the Consent Decree. On July 7, 2003, Plaintiffs Concerned Citizens for Nuclear Safety, Inc. and Jerome Chavez (collectively "CCNS") filed a Motion to Enforce Consent Decree. After carefully considering the arguments in these motions, I conclude that the Motion to Enforce Consent Decree should be denied, and the Motion to Dismiss should be granted.

**I.    Background**

On November 27, 1991 and again on November 23, 1992, the United States Environmental Protection Agency ("EPA") issued Notices of Noncompliance to Defendant DOE, finding that the operations at Defendant's Los Alamos National Laboratory ("LANL") violated provisions of the Clean Air Act ("CAA"). In response to these ongoing violations, CCNS commenced a lawsuit against DOE under the citizens' suit provision of the CAA. CCNS alleged,

among other things, that DOE had not conducted proper monitoring of certain radionuclide release points at LANL to confirm low emission levels, as required under Subpart H of the National Emissions Standards for Hazardous Air Pollutants, 40 C.F.R. § 61.93 ("Subpart H").

After this lawsuit was filed, EPA and DOE entered into a voluntary Federal Facility Compliance Agreement, ("FFCA"), which purported to resolve the noncompliance issues that EPA had identified at LANL. However, CCNS was not a party to the FFCA, and proceeded with this lawsuit to ensure that the operations at LANL fully complied with the provisions of the CAA, including Subpart H. By Memorandum Opinion and Order of April 2, 1996, the Honorable Edwin Mechem granted CCNS's Motion for Partial Summary Judgement, finding that DOE was in violation of the CAA and its implementing regulations and standards. Judge Mechem also found that the FFCA between EPA and DOE did not constitute a defense to the citizens' suit. Subsequently, the parties executed the Consent Decree that is at issue in these pending motions.

The Consent Decree required DOE to fund a series of comprehensive independent technical audits to verify whether LANL was in compliance with Subpart H. The first audit was to commence in 1997, followed by a second audit in 2000. If the independent auditor deemed it to be necessary, then a third audit was to commence in 2002. If the third audit identified substantive deficiencies with compliance with Subpart H that required corrective actions, then a fourth audit was to be performed no later than the end of calendar year 2003.

In 1998, the independent technical auditor, Dr. John Till, completed the first audit mandated by the Consent Decree. Shortly thereafter, CCNS filed a motion to modify the Consent Decree, seeking to increase the amount that DOE was required to spend for the 1998 audit from $300,000 to $424,000. In that motion, CCNS did not raise any objections to the methodology or

2

standard that Dr. Till had employed in the first audit to verify that LANL was in compliance with Subpart H. By Memorandum Opinion and Order of February 16, 1999, this Court denied Plaintiffs' motion, finding that there was no legal basis or change in factual circumstance that would warrant modifying the Consent Decree.

In October, 2002, Dr. Till issued a third technical audit report. Dr. Till concluded in the third audit report that there were no substantive deficiencies in LANL's compliance with Subpart H that required corrective action. Dr. Till further concluded that, based on this finding, no further audits were required under the terms of the Consent Decree. Subsequently, DOE filed a Motion to Dismiss on the grounds that the requirements of the Consent Decree have been satisfied. CCNS responded by filing a Motion to Enforce Consent Decree, arguing that Dr. Till failed to properly audit LANL for compliance with Subpart H in accordance with the terms of the Consent Decree.

**II.     Discussion**

<u>The Requirements of the Consent Decree</u>

Plaintiffs argue that Dr. Till's third audit violated the terms of the Consent Decree because he used an improper standard to determine LANL's compliance with the monitoring requirements for "minor sources" of radionuclide emissions under Subpart H.[1] According to Plaintiffs, Subpart H requires "periodic confirmatory measurements" of minor sources to ensure low radionuclide emissions. Plaintiffs assert that LANL is not performing such periodic measurements, but instead

---

[1] "Minor source" refers to radionuclide release points that have a potential to discharge radionuclides into the air in quantities that could cause an effective dose equivalent of less than or equal to 1% of the standard. <u>See</u> 40 C.F.R. § 61.93(b)(4)(i).

is relying on engineering calculations to estimate emissions from minor sources.[2]  Plaintiffs claim that Dr. Till erroneously believed that the use of engineering calculations was a permissible substitute for performing direct measurements, and that this mistake led him to conclude that LANL was in compliance with Subpart H.  Plaintiffs argue that, because the Consent Decree requires Dr. Till to audit LANL for full compliance with Subpart H, it necessarily also requires him to determine whether LANL is performing periodic confirmatory measurements of minor sources.  Since Dr. Till did not apply this standard in his third audit of LANL, Plaintiffs claim that the audit violates the terms of the Consent Decree.  Plaintiffs ask this Court to remand the third audit to Dr. Till so that he may perform the audit using the proper standard - namely, by determining whether actual periodic confirmatory measurements are taking place.

To assess the merit of Plaintiffs' claim, it is necessary to examine the Consent Decree's requirements concerning the independent technical audits.  A consent decree is to be construed for enforcement purposes basically as a contract.  United States v. Northern Colorado Water Conservancy District, 608 F.2d 422, 430 (10th Cir. 1979) (citing United States v. ITT

---

[2]  The FFCA between EPA and DOE permits the use of engineering calculations to estimate low radionuclide emissions from minor sources.  Plaintiffs point out that the FFCA itself states that the use of engineering calculations does not fully comply with the monitoring requirements of Subpart H.  Plaintiffs also argue at length that the FFCA constitutes a de facto amendment to Subpart H, and therefore is illegal under the holding in Appalachian Power Co. v. EPA, 208 F.3d 1015 (D.C. Cir. 2000).  Yet, it is unclear how the legality of the FFCA, a private agreement between DOE and EPA, is relevant to a determination of whether the independent technical auditor complied with the requirements set forth in the terms of the Consent Decree.  Plaintiffs' argument appears to be an attempt to argue the merits of the original claims in this lawsuit, which the Plaintiff chose to settle by entering into the Consent Decree.  Therefore, this argument is an improper basis for interpreting the terms of the Consent Decree.  See Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 574 (1984) (the scope of a consent decree must be discerned within its four corners, and not by reference to what might have been written had the parties established their claims in litigation) .

Continental Banking Co., 420 U.S. 223, 236 (1975)).  Courts will construe a consent decree using traditional principles of contract interpretation.  Wolfe v. Ingram, 275 F.3d 1253, 1266 (10th Cir. 2002).  Under the law of the State of New Mexico, it is well established that courts will apply the plain meaning as written in interpreting the terms of a contract.  Christmas v. Cimarron Realty Co., 98 N.M. 330, 332 (N.M. 1982).

     Paragraph 4.1 of the Consent Decree states that the purpose of the comprehensive technical audits is to verify whether LANL is in full compliance with Subpart H during the term of the Decree.  Paragraph 4.6 states: "the scope and depth of the technical audits will be determined by the independent auditor, exercising sound scientific judgment, subject to the cost limits set forth below."  The provision goes on to suggest parameters that the independent auditor may choose to follow when conducting the audit.  However, the Consent Decree is silent with respect to the standard or methodology that the independent auditor should use in determining LANL's compliance with Subpart H.

     Plaintiffs argue that Dr. Till's audit violated the terms of the Consent Decree because he applied an incorrect standard in determining whether LANL was in compliance with Subpart H.  Yet, since the Consent Decree is silent with respect to the standard that Dr. Till should apply, Plaintiffs' argument relies on the following inference: since the Consent Decree states that the purpose of the audit is to determine LANL's compliance with Subpart H, then the Consent Decree must require the auditor to apply the "periodic confirmatory measurement" standard set forth in Subpart H.

     Under New Mexico law, courts cannot change or modify the language of a contract for the benefit of one party and to the detriment of another.  Smith v. Price's Creameries, 98 N.M.

5

541, 545 (N.M. 1982).  In the absence of ambiguity, a court must interpret and enforce the clear language of the contract and cannot create a new agreement for the parties." Montoya v. Villa Linda Mall, Ltd., 110 N.M. 128, 129 (N.M. 1990).   Here, the unambiguous and clear language of the Consent Decree gives Dr. Till the discretion to exercise his sound scientific judgment to determine the scope and depth of the independent technical audits.  The plain language does not impose a specific requirement about what standard Dr. Till should use in performing the audits.  Thus, the Court cannot alter these terms so as to add an additional requirement stating which standard Dr. Till should apply.

Plaintiffs contend that Dr. Till's use of the engineering calculation standard is evidence that he did not audit LANL for compliance with Subpart H, since that standard is not expressly contained in Subpart H.  Plaintiffs argue that, as a matter of law, the standard contained in Section (b)(4)(i) of Subpart H should be used to determine if minor sources at LANL are in compliance with Subpart H.  However, Plaintiffs' argument rests on an interpretation of the terms of Subpart H, which was the regulation that Plaintiffs sought to enforce in the original lawsuit, rather than the terms of the Consent Decree.  The Supreme Court has held that courts should not construe a consent decree based on the regulation that Plaintiffs sought to enforce in the original lawsuit.  See United States v. ITT, 420 U.S. at 235-36 (a consent decree should be construed without reference to the legislation on which the lawsuit is based).  Since the plain language of the Consent Decree does not incorporate the standard set forth in Section (b)(4)(i) of Subpart H, Dr. Till was not required to use that standard in his audit of LANL.

Even if Plaintiffs were correct in their construction of the Consent Decree's requirements, the doctrine of laches bars Plaintiffs from bringing this claim.  In order to prove the affirmative

defense of laches, the defendant must show that there was an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by that delay.  Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997).

Here, the Defendant asserts, and Plaintiffs do not deny, that Dr. Till applied the same engineering calculation standards in both the 1998 and 2000 audits.  Yet, Plaintiffs did not raise this claim after those audits were performed.[3]  To raise this claim now, more than five years after the performance of the first audit, is unreasonable under the circumstances.  Moreover, the delay is prejudicial to DOE because the remedy that Plaintiffs seek is more burdensome than it would have been had Plaintiffs asserted this claim earlier.  Had the Plaintiffs brought this claim after the first audit, the Court could have ordered the independent auditor to conduct the requisite future audits in accordance with the Court's ruling.  However, the second and third audits have already been completed.  Consequently, Plaintiffs' request that the Court remand the third audit to Dr. Till for further auditing would mean an additional delay, inconvenience, and expense to Defendant that would not have resulted if Plaintiffs had raised this claim earlier, after the first audit.

Plaintiffs point out that the doctrine of laches is disfavored in environmental cases.  See, e.g., Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1337-38 (10th Cir. 1982).  Yet, that policy

---

[3] Plaintiffs state that, while they did not raise this claim in court, they did raise objections to the auditor's use of FFCA standards through the administrative process created by the Consent Decree by submitting comments on draft audit reports.  Therefore, Plaintiffs assert that DOE was on notice of CCNS's concerns, and "could have chosen to assist in resolving the controversy if it had been so inclined."  However, it is unclear how DOE would have been able to resolve this controversy, given that Plaintiffs' objection was not with DOE, but with the standard that the independent technical auditor chose to employ in the audits.  The fact that Plaintiffs raised objections in the dispute resolution process shows that Plaintiffs were fully aware that Dr. Till was using the standard to which Plaintiffs objected, but it does not adequately explain their delay in bringing this claim.

exists to protect the interests of the general public by preventing environmental harm.  See id.  Here, the Plaintiffs have not asserted what environmental damage, if any, has resulted from Dr. Till's use of the engineering calculations standard in his audit of LANL.  Plaintiffs have not asserted that the radionuclide emissions from minor sources at LANL are in excess of the levels permitted by Subpart H.  They simply assert that the engineering calculation standard used to estimate those emission levels is less accurate than direct measurement of the emissions levels.  While this may be true, it does not show that using the engineering calculation standard has resulted in environmental harm.  Therefore, the policy disfavoring the doctrine of laches in environmental cases would not apply here.

In sum, Dr. Till's use of the engineering calculation standard does not violate the terms of the Consent Decree.  The Decree gives Dr. Till broad discretion and does not mandate the standard or methodology that Dr. Till should use when conducting the audits, and the Court will not alter the terms of the Consent Decree so as to impose the requirement of using a particular standard.

Motion to Dismiss

Dr. Till has performed three audits under the Consent Decree.  Under Paragraph 4.5(a), the first audit was completed in 1998.  Under Paragraph 4.5(b), the second audit was completed in 2000.  Using his independent judgment as provided for in Paragraph 4.5(c), Dr. Till determined that a third audit should be conducted, and it was completed in 2002. In the third technical audit report, Dr. Till stated that there were no substantive deficiencies with LANL's compliance with Subpart H that he believed required corrective action.  Under Paragraph 4.5(d), a fourth audit should be conducted only if the third audit identifies such substantive deficiencies.  As a result of

Dr. Till's conclusions in the third audit, under the terms of the Consent Decree no further audits are necessary.  Since Defendant now has fulfilled all of the requirements of the Consent Decree, under the terms of Paragraph 32 of the Consent Decree this Court's jurisdiction over the subject of the Consent Decree has terminated and Defendant is entitled to have this case dismissed with prejudice.

   IT IS ORDERED THAT:

1. Plaintiffs' Motion to Enforce Consent Decree is DENIED;

2. Defendant's Motion to Dismiss With Prejudice is GRANTED;

3. Under the terms of Paragraph 32 of the Consent Decree the releases set forth in Paragraphs 20 and 21 survive the termination of the Consent Decree; and

4. This case is dismissed with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE